IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLINTON JACKSON and JAMES THOMAS, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiffs,* | § § | |
| | § | Case No. 4:19-cv-00178-SRC |
| v. | § § | |
| SYNERGIES3 TEC SERVICES, LLC., | § § | |
| *Defendant.* | § § | |
| | | |
| TALON OVERLAND, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Case No. 4:21-cv-01008 SRC |
| | § § | |
| SYNERGIES3 TEC SERVICES, LLC., BENTON ODOM, and ERIC ATCHLEY, | § § § § | |
| *Defendants.* | | |

## JOINT MOTION FOR FINAL FLSA SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE

Defendants Synergies3 TEC Services, LLC, Benton Odom and Eric Atchley, along with Plaintiffs Clinton Jackson, James Thomas and Talon Overland, individually and on behalf of all others similarly situated, by and through their counsel, hereby file this Joint Motion for Final Fair Labor Standards Act ("FLSA") Settlement Approval and Dismissal With Prejudice. The proposed settlement is a fair and reasonable resolution of a bona fide dispute and should therefore be finally approved.

1

## **RELEVANT BACKGROUND**

On August 26, 2021, this Court issued its Order consolidating the two above-captioned lawsuits for settlement purposes and granting preliminary approval. (ECF No. 187.) In doing so, the Court (1) consolidated the two above-captioned collective actions for settlement purposes; (2) preliminarily approved the settlement as a fair and reasonable resolution of a bona fide dispute; (3) approved Analytics Consulting, LLC as Settlement Administrator; (4) approved the proposed Notice of Settlement and directed the Administrator to distribute the Notice in accordance with the terms of the Settlement Agreement; (5) preliminarily approved Plaintiffs' Counsel's requested attorneys' fees and costs; and (6) preliminarily awarded the three Named Plaintiffs service payments of $5,000 each. (*Id*.) The Court directed the Parties to file the instant Joint Motion for Final FLSA Settlement Approval on or before November 22, 2021, and set a Final Settlement Hearing for November 30, 2021. (*Id*.)

The Court is familiar with the factual background and procedural history of this case and the parties' settlement, as discussed in detail in the Joint Motion for Preliminary Settlement Approval, which is incorporated here by reference. (ECF No. 186.) Accordingly, the Parties summarize the settlement and update the Court on the events following preliminary approval.

**A.   Notice of Settlement**

On September 9, 2021, the Settlement Administrator distributed the Notice of Settlement and Release of Claims Form to the 270 eligible Plaintiffs by U.S. Mail. (Ex. A, Template Notice of Settlement Offer; Ex. B, Template Release of Claims Form.) Plaintiffs had 60 days— until November 8, 2021—to accept or reject their settlement offer. (Settlement Agmt. ¶ 2.6, ECF No. 186-2.)

The Notice advised Plaintiffs that the litigation had been settled and detailed the terms of the settlement. (Notice of Settlement, ECF No. 186-2.)  Specifically, it informed Plaintiffs of their pro rata share of the Settlement Fund, described the litigation and settlement, explained how they could participate and receive their settlement payment, provided contact information for Plaintiffs' Counsel, and disclosed the amount of the service payments for the Named Plaintiffs and attorneys' fees and litigation costs Plaintiffs' Counsel would ask the Court to approve. (*Id.*)  The Notice advised that the settlement offer could be accepted by either signing and postmarking the Release Form by November 8, 2021, or by signing an electronic Release Form available at www.collectiveaction.io/synergies3. (Ex. A, p. 2.)  The Notice further explained the extent of the claims that would be released if they chose to participate in the settlement. (*Id.* ¶ VI.)  Finally, it also advised Plaintiffs of their option to reject their individual settlement offer and detailed the impact of not responding to the offer in any manner. (*Id.* ¶ V.)

The Settlement Administrator provided updates to Plaintiffs' Counsel throughout the notice period. (Coleman Decl. ¶ 3.)  A total of 14 Notices were returned to the Settlement Administrator as undeliverable.  After running a skip trace, the Administrator located five new addresses, and re-mailed Notices to three of those individuals (the other two had submitted their Release Forms.) (Coleman Decl. ¶ 4.)  Plaintiffs' Counsel made their own attempts to ensure all 270 Plaintiffs received the Notice.  Counsel sent two reminder emails and called and text messaged all non-responders. (Coleman Decl. ¶ 5.)  Plaintiffs' Counsel further sent a letter to those whose phone numbers or emails were inoperable. (Coleman Decl. ¶5.)  Moreover, Plaintiffs' Counsel either emailed or mailed an additional copy of the Notice and Release Form to those Plaintiffs who reached out indicating they had not received the form or had lost it. (Coleman Dec. ¶ 6.)  Plaintiffs'

Counsel responded to communications from Plaintiffs during the notice period. (Coleman Decl. ¶ 7.)

Of the 270 eligible Plaintiffs, 235 returned their Release of Claims Form. (Coleman Decl. ¶ 8.) A total of 35 individuals did not respond. (Coleman Decl. ¶ 8; Ex. C, List of Plaintiffs.[1]) No Plaintiffs rejected the settlement. (Coleman Decl. ¶ 8.) Accordingly, approximately 87% of the Plaintiffs accepted and are included in the settlement.

**B.      Settlement Allocation**

The Settling Plaintiffs will each receive a pro rata share of the total settlement amount. Prior to calculating the initial individual settlement amounts, deductions were made from the Settlement Fund for out-of-pocket litigation costs totaling $19,551.16, a 33 1/3% contingent fee totaling $166,666.67 to Plaintiffs' Counsel, service payments of $5,000 for each of the three Named Plaintiffs, $8,000.00 in estimated fees to be paid to the Administrator for administration costs, and $5,000 from the contingency fund for settlement administration. The individual allocations were then determined based on when and for how long each individual worked as an installation technician with Synergies3 and the pay data produced by Defendants to determine the appropriate overtime rate. The amount of these initial allocations was detailed in each Plaintiff's individual Notice of Settlement. In accordance with the Settlement Agreement, since the close of the Notice Period the allocations for 35 Non-Responder Plaintiffs have been reallocated pro rata to the Settling Plaintiffs. (Settlement Agmt. ¶ 6.7, ECF No. 186-2.) The unused portion of the contingency fund, a total of $4,130, was also reallocated pro rata to the Settling Plaintiffs.[2] The

---

[1] Exhibit C lists the Plaintiffs who are participating in the Settlement, and the Plaintiffs who did not respond.
[2] The only amount deducted from the Contingency Fund is $870, which is the expected amount of travel costs for Plaintiff's Counsel to attend the final approval hearing. Plaintiffs' Counsel had not included anticipated costs in their Motion for Preliminary Approval in the event the hearing would

4

final administrator costs and fees totaled $7,308.12 (less than the estimated $8,000), and thus the remaining $691.88 was reallocated. The final distribution amounts range from $52 (the minimum allocation) to $6,372.02, with an average of $1,236.61. (Coleman Decl. ¶ 9.) Both Plaintiffs' Counsel and Defendants' Counsel have reviewed and accepted the proposed final distributions. (Coleman Decl. ¶ 9.)

C. **Settlement Payments and Release of Claims**

The Settlement Administrator must disseminate the settlement checks within 14 days of this Court's dismissal of the above-entitled actions. (Settlement Agmt. ¶ 7.2, ECF No. 186-2.) As detailed in the Settlement Agreement, Settling Plaintiffs will be paid their settlement payments in two checks of equal amounts. (*Id.* at ¶ 7.1.) A total of 50% of the payment to each Settling Plaintiff will be reported as nonemployee compensation for tax purposes with each Settling Plaintiff receiving an IRS Form 1099-NEC as "Non-Employee Compensation." (*Id.*) The remaining 50% of the settlement payment to each Settling Plaintiff shall constitute liquidated damages, penalties, and interest, and will be reported on IRS Form 1099-MISC, Box 3, "Other Income." (*Id.*) The Settling Plaintiffs shall have ninety (90) days after issuance by the Administrator to cash their checks. (*Id.* at ¶ 7.2.) At the conclusion of the 90-day period, any uncashed checks will be donated to the parties' agreed-upon *cy pres* beneficiary. (*Id.*)

## LEGAL ANALYSIS

The Parties seek final approval of the settlement of Plaintiffs' FLSA claims. As explained in the joint motion for preliminary settlement approval (ECF No. 186), court approval is warranted because this settlement provides very fair value to the FLSA Plaintiffs and will bring hotly contested litigation to a close. The uniformly favorable response to the settlement—the Settlement

---

occur remotely.

5

Administrator did not receive any rejections and approximately 87% of all eligible Plaintiffs executed their claim forms—also strongly supports approval.

### A. The FLSA Settlement Is a Reasonable Compromise of a *Bona Fide* Dispute.

This Court preliminarily found the Settlement Agreement to be "the result of litigation over a bona fide FLSA dispute." (ECF No. 187 at ¶ 2.). A settlement is bona fide if it "reflects a reasonable compromise over issues actually in dispute." *Del Toro v. Centene Management Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *2 (E.D. Mo. May 5, 2021). Here, the settlement is a compromise over numerous issues that both Plaintiffs and Defendants acknowledge to be hotly disputed, making approval warranted. As described in the Parties' motion for preliminary approval (ECF No. 186 at 8), there are critical issues in dispute including: (1) whether Plaintiffs were properly classified as exempt independent contractors under the FLSA; (2) the number of overtime hours worked; (3) whether Defendants acted in good faith in classifying Plaintiffs as independent contractors, which finding could eliminate a recovery of liquidated damages; (4) whether Defendants willfully violated the FLSA; and (5) whether the case may proceed to trial as a collective action. While both sides continue to believe in the merits of their positions, given the time and expense of collective action litigation, risk of delay, and the uncertainty of motion practice and trial, the parties' proposed settlement is a reasonable compromise. Accordingly, the bona fide dispute factor is met.

### B. The Proposed Settlement is Fundamentally Fair, Adequate, and Reasonable.

In granting preliminary settlement approval, this Court found the Settlement Agreement negotiated by the parties to be, preliminarily, "fair and reasonable." (ECF No. 187 at ¶ 2.) Courts may consider the following factors when determining whether a settlement in an FLSA case is fair and reasonable:

6

    (1)    the stage of the litigation and amount of discovery exchanged;

    (2)    the experience of counsel;

    (3)    the probability of plaintiffs' success on the merits;

    (4)    any "overreaching" by the employer in the settlement negotiations; and

    (5)    whether the settlement was the product of arm's length negotiations between represented parties based on the merits of the case.

*Ezell v. Acosta, Inc.*, No. 4:16CV870 RLW, 2019 WL 8160704, at *2 (E.D. Mo. Apr. 4, 2019) (citation omitted).

As detailed in the Parties' motion for preliminary approval, the settlement is fair and reasonable and should be approved. (ECF No. 186 at 8-10.) The Parties engaged in extensive discovery and exchange of information and filed cross-motions for summary judgment, arguing the merits of the claims in extensive detail. The Parties, all of whom were represented by counsel with extensive FLSA litigation experience, engaged in arm's length and good-faith settlement negotiations. Specifically, the Parties attended an initially unsuccessful full-day mediation with John Phillips on December 8, 2020, but along with the mediator's help continued to engage in direct discussions about the merits of the case, damages, and the financial condition of Defendant Synergies3. The settlement, moreover, reflects a good recovery for the Settling Plaintiffs. The Settling Plaintiffs will receive an average of $ $1,236.61, which represents the equivalent of approximately 2.33 unpaid overtime hours for each eligible week worked. (Coleman Decl. ¶ 9.) Instead of participating in prolonged litigation on challenging issues—litigation for which they may have received nothing—under the settlement Plaintiffs are guaranteed money now. Even if Plaintiffs won on liability and were awarded damages at trial, the ability of Defendants to pay a judgment was a significant consideration when negotiating the settlement terms. Moreover, the agreement does not reflect any overreaching by Defendants—it does not contain a confidentiality

7

provision and includes a release narrowly tailored to the claims. The Parties submit that the settlement is fair and reasonable and should be approved.

**C.  The Court Should Approve the Requested Attorneys' Fees and Costs, Service Awards, and Administration Costs.**

The Court preliminarily awarded Plaintiffs' counsel reasonable attorneys' fees in the amount of $166,666.67, litigation costs in the amount of $19,551.16, and service payments of $5,000 for each of the three Named Plaintiffs. (ECF No. 187 at ¶¶ 6-7.)

    i.    <u>Attorneys' Fees and Costs</u>

As explained in the motion for preliminary approval, Plaintiffs' counsel seek attorneys' fees in the amount of $166,666.67 calculated as one-third (33.33%) of the Settlement Fund. The FLSA provides for payment of attorneys' fees through settlement and "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of attorneys' fees." *Del Toro*, 2021 WL 1784368, at *2. Rather, this Court should only assess whether the fees are fair and reasonable, and the inquiry "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A request for one-third of a settlement in attorneys' fees is frequently approved by courts in the Eighth Circuit. *See Del Toro*, 2021 WL 1784368, at *2 ("a 35% fee is within the range routinely approved by courts in the Eighth Circuit"); *Nyazee v. MBR Mgmt. Corp.*, No. 4:14-CV-01561-AGF, 2016 WL 126363, at * 2 (E.D. Mo. Jan. 12, 2016) (finding attorneys' fees of $75,000—one-third of the total settlement amount— to be reasonable). In the motion for preliminary approval, the Parties detailed the factors rendering the requested fees fair and reasonable, including the results obtained for Plaintiffs, the quality of Plaintiffs' counsel and the work performed, the risk of nonpayment in contingent litigation, and that that the fees requested constituted less than the fees Plaintiffs' counsel actually expended. (Joint Motion, ECF No. 186 at 11-13.) In addition to these factors, the favorable response to the

8

Notice of Settlement—with no Plaintiffs rejecting the settlement—supports granting the requested fees. Plaintiffs further note they incurred additional fees following this Court's preliminary approval order, including fees expended in coordinating the Notice of Settlement with the Settlement Administrator, answering Plaintiffs' questions about the settlement, finalizing the settlement allocations, and drafting and filing the instant motion for final FLSA settlement approval. This additional work resulted in $20,995.00 fees expended, resulting in a total of $663,653.75 fees incurred by Plaintiffs' counsel overall in the *Jackson* and *Overland* matters. Given these considerations the request for attorneys' fees in the amount of $166,666.67 is fair and reasonable and should be approved.

Likewise, Plaintiffs' request a total of $20,421.16 in out-of-pocket litigation costs. In connection with Plaintiffs' Motion for Preliminary Approval, Plaintiffs' Counsel requested $19,551.16 for out-of-pocket costs, and detailed such amount in the Declaration of Reena I. Desai. (ECF No. 186-1.) Plaintiffs' Counsel seeks the additional $870 for travel costs to the in-person November 30, 2021 final approval hearing that Plaintiffs previously anticipated would be held remotely. These costs reflect reasonable costs that were necessary for successful prosecution of the cases, and should be approved.

Finally, pursuant to Section 4.2 of the Settlement Agreement, the costs to administer the settlement shall be deducted from the Settlement Funds. (Settlement Agmt. ¶ 4.2, ECF No. 186-2.) The total amount in Settlement Administration costs incurred is $7,308.12. This amount is fair and reasonable to effectuate this settlement and should be approved.

    ii.    <u>Named Plaintiffs' Service Awards</u>

The Court should also finally approve the requested service payments of $5,000 for each of the Named Plaintiffs. As detailed in the motion for preliminary approval, the Named Plaintiffs

(Clinton Jackson, James Thomas, and Talon Overland) were instrumental in initiating and prosecuting the cases. (ECF No. 186 at 14.)  All three individuals provided crucial information throughout the case and reviewed and signed the settlement agreement. (*Id.*)  The service payments of $5,000 represent only 1% of the $500,000 Settlement Fund per each Named Plaintiff. Accordingly, and as set forth in the motion for preliminary approval, the service payments are reasonable and should be approved.

### D.     The Court Should Approve the Mutually Agreed Upon *Cy Pres* Recipient

In the event any settlement checks remain uncashed after ninety (90) days, the Settlement Agreement calls for those funds to be donated to a mutually agreed upon cy pres beneficiary. (Settlement Agreement ECF No. 186-2 at ¶ 7.3).  The Parties have mutually agreed upon Legal Services of Eastern Missouri ("LSEM") as the beneficiary. (Coleman Decl ¶ 10.) LSEM is a non-profit organization that "advances justice through legal representation, education and supportive services" by "partner[ing] with the community to improve lives, promote fairness and create opportunities for those in need." *See* https://lsem.org/about/.  It provides "free civil legal assistance, advice and information for low-income people and the elderly in 21 eastern Missouri counties," and its services include: "representation in courts and administrative hearings, providing legal advice or referral information, assisting with community-based economic development, giving legal education through community workshops and other materials, and [o]ffering professional training for attorneys, volunteers and others." *See* https://lsem.org/get-help-now/services/.  Given its mission and the services it provides the Parties submit that LSEM is an appropriate *cy pres* recipient.

### CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court grant their Joint Motion for Approval of FLSA Settlement and Dismissal with Prejudice and issue an Order in the form of the Proposed Order submitted contemporaneously herewith.

Respectfully submitted: November 22, 2021

| | |
|---|---|
| By: */s/H. Clara Coleman*<br>Rachhana T. Srey<br>MN Bar No. 340133<br>Admitted Pro Hac Vice<br>Reena I. Desai<br>MN Bar No. 0388311<br>Admitted Pro Hac Vice<br>H. Clara Coleman<br>DC Bar No. 1617218<br>Admitted Pro Hac Vice<br>4700 IDS Center, 80 S. 8th Street<br>Minneapolis, Minnesota 55402<br>Tel.: (612) 256-3200<br>Fax: (612) 215-6870<br>srey@nka.com<br>rdesai@nka.com<br>ccoleman@nka.com<br><br>Mark Potashnick, Mo. Bar # 41315<br>markp@wp-attorneys.com<br>WEINHAUS & POTASHNICK<br>11500 Olive Blvd., Suite 133<br>St. Louis, MO 63141<br>Telephone: (314) 997-9150<br>Facsimile: (314) 997-9170<br><br>Benjamin Westhoff, Mo. Bar #53047<br>bwesthoff@sedeyharper.com<br>SEDEY HARPER WESTHOFF, P.C.<br>2711 Clifton Ave.<br>St. Louis, MO 63139<br>Telephone: (314) 773-3566<br>Facsimile: (314) 773-3615<br><br>ATTORNEYS FOR PLAINTIFFS | By: */s/ Jay Aldis*<br>Robert A. Kaiser #31410MO<br>Jeremy M. Brenner #63727MO<br>Ida S. Shafaie #66220MO<br>ARMSTRONG TEASDALE LLP<br>7700 Forsyth Blvd., Suite 1800<br>St. Louis, Missouri 63105<br>314.621.5070<br>314.621.5065 (facsimile)<br>rkaiser@armstrongteasdale.com<br>jbrenner@armstrongteasdale.com<br>ishafaie@armstrongteasdale.com<br><br>Jay Aldis<br>Admitted Pro Hac Vice<br>GRAY REED & MCGRAW LLP<br>1300 Post Oak Blvd., Suite 2000<br>Houston, TX 77056<br>Tel 713.986.7175<br>Fax 713.730.5980<br>jaldis@grayreed.com<br><br>ATTORNEYS FOR DEFENDANTS |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was sent to all attorneys of record via the Court's e-filing system on November 22, 2021.

*/s/ H. Clara Coleman*